Alejandro P. Gutierrez, SBN 107688
agutierrez@hathawaylawfirm.com
**HATHAWAY, PERRETT, WEBSTER, POWERS,
CHRISMAN & GUTIERREZ, APC**
5450 Telegraph Road, Suite 200
Ventura, CA 93006-3577
Tel: (805) 644-7111; Fax: (805) 644-8296

Daniel J. Palay, SBN 159348
djp@calemploymentcounsel.com
Brian D. Hefelfinger, SBN 253054
bdh@calemploymentcounsel.com
**PALAY HEFELFINGER, APC**
1484 E. Main Street, Suite 105-B
Ventura, CA 93001
Tel: (805) 628-8220; Fax: (805) 765-8600

Michael A. Strauss, SBN 246718
mike@strausslawyers.com
Aris Karakalos, SBN 240802
aris@strausslaywers.com
**STRAUSS & STRAUSS, APC**
121 North Fir Street, Suite F
Ventura, CA 93001
Tel: (805) 641-6600; Fax: (805) 641-6607

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUG MINER, an individual, on behalf of himself and other persons similarly situated; MOES 1 through 10,000,<br><br><br>Plaintiff,<br><br>vs.<br><br>ECOLAB INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO:<br><br>CLASS ACTION<br><br>COMPLAINT FOR:<br><br>1. Violation of California Labor Code section 510;<br>2. Violations of the Federal Fair Labor Standards Act;<br>3. Violation of California Labor Code Section 203;<br>4. Violation of California Labor Code Section 226; and<br>5. Violation of California Business and Professions Code Section 17200.<br><br>DEMAND FOR JURY TRIAL |

TO ALL INTERESTED PARTIES AND TO THEIR ATTORNEYS OF RECORD:

COME NOW, PLAINTIFF DOUG MINER, and Moes 1 through 10,000 (collectively "Plaintiffs") and submit the following Complaint against ECOLAB INC. and DOES 1 through 100, inclusive (collectively "Defendants"), and each of them, as follows:

## **PARTIES**

1.      Plaintiff Doug Miner is a natural person who is a resident of San Diego County, California.  Plaintiff has worked for Ecolab Inc. from approximately October 1987 to the present.  Plaintiff was at all times relevant to this complaint an "employee" of Defendant, as that term is defined under the FLSA and California state law.

2.      Defendant Ecolab Inc. is an international sanitation company headquartered in St. Paul, Minnesota, with offices in the State of California, including in this judicial district.  Defendant is in the business of providing, among other things, sanitation and pest control service and supplies, commercial kitchen equipment and appliance maintenance, repair and products, and food safety services to restaurants, hospitals, food and beverage plants, laundries, schools, and retail and commercial properties.   Ecolab had estimated sales of over $14 billion globally in 2014 and more than 47,000 employees as of August, 2016.

3.      Defendant is, and at times relevant to this complaint was an "employer" under the FLSA and applicable California state law, and relevant Wage Orders of the

Industrial Welfare Commission.

## JURISDICTION AND VENUE

4.     This Court has personal and subject matter jurisdiction over all causes of action asserted herein.

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff asserts causes of action arising under federal law.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.  In addition, this Court has jurisdiction over the subject matter of the action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. sections 1332(d), 1453, and 1711 through 1715.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), and (c), because Defendants transacted significant business within this district and therefore are subject to personal jurisdiction in this district and because a substantial part of the events giving rise to the claims alleged occurred in this district.  Further, venue is proper in this District as this case is related to the *Ladore v. Ecolab Inc.* case previously litigated in this District, pursuant to which litigation Ecolab agreed it would change and implement a compensation plan that would treat Ecolab's pest control workers as non-exempt overtime eligible employees under California law.  Such compensation plan was used not only for the class of pest workers, but also a variety of other non-exempt positions at Ecolab Inc.  Whether this compensation plan is lawful under state and federal law is the subject of this lawsuit.

7.    Plaintiffs are ignorant of the true names and capacities of Defendants Does 1 through 100, inclusive, and by reason thereof sue said Defendants by their fictitious names. Plaintiffs will ask leave of Court to amend this complaint to allege the true names and capacity of said DOE Defendants when the same have been fully and finally ascertained.

8.    This action is brought pursuant to the Ninth Circuit holding in Morris v. Ernst & Young, LLP, 2016 WL 4433080 (9th Cir. Aug. 22, 2016) holding that a class action waiver violates the NLRA and "cannot be enforced." The Ninth Circuit in rendering its opinion, noted that "The Board has concluded that an employer violates the NLRA "when it requires employees covered by the Act, as a condition of their employment, to sign an agreement that precludes them from filing joint, class, or collective claims addressing their wages, hours, or other working conditions against the employer in any forum, arbitral or judicial." Id. at *2. Accordingly, in this case to the extent any putative class member may have signed any purported agreement waiving his or her right to file a class action relating to wages, it is unenforceable.

## GENERAL ALLEGATIONS

9.    At all relevant times herein, Plaintiff and those similarly situated were current and former employees of Ecolab who are/were non-exempt; who have worked in California for Ecolab during the last four years, who were paid pursuant to a compensation structure that provided for an overtime rate that decreased as the worker's hours increased and as a result, have not received full and correct pay for all hours

worked, and have not received accurate itemized wage statements required pursuant to Labor Code section 226; and all current and former employees of Ecolab working anywhere in the United States, who are/were non-exempt; and who have worked nationwide for Ecolab during the past three years, who were paid pursuant to a compensation structure that provided for an overtime rate that decreased as the worker's hours increased and as a result, have not received full and correct pay for all hours worked. The class definition(s) are set forth more fully below.

10.     Plaintiff Doug Miner was a class member in a wage-and-hour misclassification case litigated in this District entitled *Ladore v. Ecolab Inc.,* USDC Case No. CV11-9386 GAF (FMOx) involving a class of Ecolab Service Specialists. In April 2012, the *Ladore* court certified a class of "All current and former Senior Pest Elimination Service Specialists and Pest Elimination Service Specialists employed by Defendant Ecolab, Inc. in California from October 7, 2007 to the present." (ECF 2:11-cv-09386-GAF-FMO, Doc. 30, pg. 4). In so doing, the court concluded that the so-called "haz/mat exemption" was inapplicable to the case. (*Id.* at pg. 18). The *Ladore* case followed a previous state court class action, *Roe v. Ecolab Inc.,* in which the same class was certified. (*Id.* at pg. 4). The *Roe* case was ultimately resolved through a mediated settlement, with the settlement amount based on a formula applied to the factual findings of an arbitrator. (*Id.*). On January 22, 2013, the *Ladore* court issued an order relating to the parties' cross-motions for summary judgment finding that class members were non-exempt employees. (ECF 2:11-cv-09386-GAF-FMO, Doc. 65, pg. 13). On February 22, 2014, the parties

attended a mediation before Carl J. West, a retired judge of the Los Angeles Superior Court and after lengthy negotiations reached a settlement. (ECF 2:11-cv-09386-FMO-JC, Doc. 96-1, pgs. 8 – 9). One of the terms of the settlement was that by no later than June 30, 2013, Ecolab would adopt and implement a new compensation model for its Pest Elimination Service Specialists, Senior Pest Elimination Service Specialists and Select Segment Specialists that treats them as non-exempt overtime eligible employees under California law. (*Id.*, pg. 10). On November 12, 2013, the *Ladore* court finally approved the parties' class action settlement requiring Ecolab not only to pay approximately 400 class members from the settlement fund, but to re-classify them as non-exempt for purposes of overtime compensation. (ECF 2:11-cv-09386-FMO-JC, Doc. 112, pg. 2).

11.    On or about May 13, 2013, Ecolab did change its compensation plan as to its Service Specialists in California. Further, upon information and belief, Plaintiff alleges that Ecolab changed its compensation plan as to its Service Specialists nationwide in approximately October of 2016.

12.    Upon information and belief, Plaintiffs allege that other non-exempt Ecolab employees in California and nationwide working in other divisions of Ecolab are also subject to compensation plans that provide for an overtime rate that decreases as the worker's hours increase and as a result, have not received full and correct pay for all hours worked. Upon information and belief, in some instances, Ecolab's compensation plan results in an overall decrease in pay the more hours that are worked.

/ / /

COMPLAINT

## THE PAYROLL SCHEME TO AVOID OVERTIME COMPENSATION

13.    Plaintiffs allege that when Ecolab - after this District's rulings in *Ladore v. Ecolab* – could no longer avoid paying overtime wages by misclassifying its Service Specialists, it simply switched to using an illegal compensation plan to greatly reduce – or avoid altogether - paying overtime wages. Plaintiffs allege that the change to Ecolab's compensation plan was merely an artifice to give the appearance of compliance with the overtime requirements of state and federal law.

14.    Under Ecolab's "2013 Incentive Compensation Plan," which Plaintiffs allege is the current compensation plan for Ecolab's Service Specialists, Service Specialists' compensation begins with a "base rate" then adds a "variable rate" to calculate a purported "applicable hourly rate." The variable rate is derived by taking the revenue generated by the employee on his route (based on invoices he generates), divided by the total hours worked (both revenue-generating hours and non-revenue generating hours [i.e. hours spent at company-mandated meetings, hours accounted for on vacation days, weekend-shift hours, hours spent on mandated conference calls]), to determine the "revenue/hour achieved." It is important to note that Ecolab had the power to, and regularly did, assign non-revenue generating hours to employees, which necessarily resulted in a lower "variable rate" for said employee, all else being equal. Then the "revenue/hour" is compared to the route's "Target Revenue/Hour" yielding a percentage of target achieved. The "Variable Rate" is based on the percentage of target achieved pursuant to a payout schedule created by Ecolab. Under this scheme, if an employee's

route hypothetically made $4,000 in revenue for 42 hours worked, his "revenue/hour" would be $95.25.  Thus, if an employee's "Target Revenue per Hour" as unilaterally determined by Ecolab was $90, the $95.25 "revenue/hour" would be divided by the "Target Revenue per Hour" of $90.00, resulting in 102.7% of the target achieved.  Thus, if the example employee's "Target Variable Rate" assigned by Ecolab was $7.00, the employee would receive 2.7% over $7 as the variable rate for the pay period, or $7.0189.  If the employee's base rate was $10.50, the regular rate (after adding the $7 plus variable rate) would be about $17.52.  In this example, overtime hours would be paid at 1.5 times $17.52.  Using the same hypothetical, if the total hours worked were 55, the revenue/hour would drop to $72.72.  That figure divided by a "Target Revenue per Hour" of $90 results in 80.8% of the target achieved.  In that case, the variable rate would drop from the $7 "Target Variable Rate" to $5.64.  The regular rate would then be $16.15 and the overtime rate would correspond to this lower rate.   Aside from being unlawful under FLSA standards and California labor law, the above compensation plan had the effect of incentivizing Ecolab's employees to under-report actual hours worked in order to maintain a higher "variable rate" for any given pay period.

15.    Plaintiff alleges that during the relevant time period, he and other non-exempt Ecolab employees regularly worked more than eight (8) hours a work day and forty (40) hours a work week.  Under Ecolab's compensation scheme, the more hours they worked, the less their overtime rate was, and in some cases, depending on the hours they worked (including mandatory weekend duty) the overtime rate was drastically

reduced.

16. Plaintiffs allege that Ecolab's nationwide compensation scheme for its Pest Elimination Division that was implemented in 2016 is the same as the California compensation plan described herein.

17. Plaintiffs allege that other non-exempt Ecolab employees [i.e. not Service Specialists] employed in California and nationwide are/were also subject to compensation schemes that provide for an overtime rate that decreases as the worker's hours increase and as a result, have not received full and correct pay for all hours worked.

18. Plaintiffs allege that Ecolab's state and nationwide compensation plans that provide for an overtime rate that decreases as the worker's hours increase do not comply with state and federal law.

19. Plaintiffs allege that due to the compensation plans that provide an overtime rate that decreases as the worker's hours increase, Defendants failed to pay Plaintiffs all legal overtime wages due under state and federal law, including at the time of any termination of employment.

20. Plaintiffs allege that due to the compensation plans that provide an overtime rate that decreases as the worker's hours increase, Defendants did not provide Plaintiffs with accurate wage statements under California law.

21. Plaintiffs allege that due to the compensation plans that provide an overtime rate that decreases as the worker's hours increase, Defendants violated California's unfair competition laws.

COMPLAINT

## HISTORICAL POLICY OF OVERTIME LAWS

22.     Under state and federal law, overtime compensation is based on an employees' "regular rate." (*See Labor Code* § 510, Subd. (a); 29 U.S.C. § 207(1), (2).). In California, "eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." (*Labor Code* § 510).

23.     The FLSA requires "employers to compensate employees for hours in excess of 40 per week at a rate of 1 ½ times the employees' regular wages." (29 U.S.C. § 207(a)).

24.     To calculate the "regular rate" of pay under California law, all remuneration received by an employee in a workweek in which overtime is not worked is included in the calculation. (29 U.S.C. § 207(e).[1]  An artificial "regular rate" of pay may not be used for the purposes of calculating overtime. (29 C.F.R. § 778.500).

25.     29 C.F.R. § 778.316 states in part that:

[T]he parties cannot lawfully agree that the rate" that is "applicable to a particular type of work" "shall be lower merely because the work is performed during the statutory overtime hours, or during a week in which statutory overtime is worked.

26.     29 C.F.R. § 778.327 states in part:

[W]here different rates are paid from week to week for the same work and where the difference is justified by no factor other than the number of hours

---

[1] The California Division of Labor Standards Enforcement adheres to federal standards with respect to the calculation of the "regular rate" of pay, and thus, federal regulations have been held "useful guidance" in applying California overtime law. *Huntington Mem'l Hosp. v. Superior Court,* 131 Cal.App.4th 893, 902 (2005).

COMPLAINT

worked by the individual employee – the longer he works the lower the rate – the devise is *evasive* and the *rate actually paid* in the shorter or *nonovertime* [period] is his *regular rate* for overtime purposes in all weeks. (Emphasis added).

See also *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) ["regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek"].).

27.    The scheme of varying the rate of pay, which decreases as the length of the workweek increases, is expressly held as invalid under federal regulation. (See 29 C.F.R. §§ 778.321 through 778.329.

28.    29 C.F.R. § 778.500 provides in part:

(a) Since the term regular rate is defined to include all remuneration for employment (except statutory exclusions) whether derived from hourly rates, piece rates, production bonuses or other sources, the overtime provisions of the act cannot be avoided by setting an artificially low hourly rate upon which overtime pay is to be based and making up the additional compensation due to employees by other means. The established hourly rate is the "regular rate" to an employee only if the hourly earnings are the sole source of their compensation. Payment for overtime on the basis of an artificial "regular" rate will not result in compliance with the overtime provisions of the Act.

(b) It may be helpful to describe a few schemes that have been attempted and to indicate the pitfalls inherent in the adoption of such schemes. The device of the varying rate which decreases as the length of the workweek increases has already been discussed in §§ 778.321 through 778.329. It might be well, however, to re-emphasize that . . . the hourly rate [cannot]vary from week to week inversely with the length of the workweek.

/ / /

## CLASS ACTION ALLEGATIONS

29.    Plaintiff brings this action on his own behalf, and behalf of all persons similarly situated.  The class represents and consists of all current and former employees of Ecolab who are/were non-exempt; who have worked in California for Ecolab during the last four years, who were paid pursuant to a compensation structure that provided for an overtime rate that decreased as the worker's hours increased and as a result, have not received full and correct pay for all hours worked, and have not received accurate itemized wage statements required pursuant to Labor Code section 226 (the "California class").

30.    There is a well-defined community of interest in the questions about law and fact affecting the classes Plaintiff represents.   The class members' claims against Defendants involve questions of common or general interest, in that each was employed by Defendants and each was not paid wages owed based on the same compensation scheme whereby the overtime rate decreased as the worker's hours increased and as a result, have not received full and correct pay for all hours worked.  These questions are such that proof of a state of facts common to the members of the class will entitle each member of the class to the relief requested in this complaint.   The California class represents in excess of 375 individuals.

31.    Plaintiffs have no plain, speedy, or adequate remedy at law against Defendants, other than by maintenance of this class action, because Plaintiffs are informed and believe, and on information and belief allege, that the damage to each

member of the class is relatively small and that it would be economically feasible to seek recovery against Defendants other than by a class action.

32.    Plaintiff Doug Miner will fairly and adequately represent the interest of the class, because Plaintiff is a member of the class and Plaintiffs' claims are typical of those in the class.

33.    Plaintiff's counsel will fairly and adequately represent the interest of the class, as they are experienced wage-and-hour litigators who have been appointed as Class Counsel in numerous class action employment cases, including several successful cases against Ecolab Inc.

## **COLLECTIVE ACTION ALLEGATIONS**

34.    Plaintiff Miner brings this action on behalf of himself and other similarly situated employees as authorized under the FLSA, 29 U.S.C. § 216(b).  The employees similarly situated are as follows:

a.  **FLSA Collective**:  All current and former employees of Ecolab who are/were non-exempt, who have worked nationwide for Ecolab at any time between March 24, 2014 and the trial of this action (the "Collective Period"), who were paid pursuant to a compensation structure that provided for an overtime rate that decreased as the worker's hours increased and, as a result, have not received full and correct pay for all hours worked.

35.    Upon information and belief, Defendants knew that Plaintiff Miner and the FLSA Collective performed work that required overtime pay. Defendants operated under

a scheme to deprive these employees of overtime compensation by failing to properly compensate them for all hours worked.  Specifically, Defendants compensated Plaintiff Miner and the FLSA Collective using a compensation structure that provided for an overtime rate that decreased as the workers' hours increased.

36.    Defendants are liable under the FLSA for failing to properly compensate Plaintiff Miner and the FLSA Collective, and as such, notice should be sent to the Collective.  There are numerous similarly situated current and former workers who have been denied overtime pay by Defendants in violation of the FLSA who would benefit from the issuance of Court-supervised notice of this lawsuit and the opportunity to join. Those similarly situated workers are known to Defendants and should be readily identifiable through Defendants' records.

37.    The FLSA Collective represents over 3,000 individuals.

## FIRST CAUSE OF ACTION

### (Failure to Pay Wages Against Defendants Ecolab Inc. and Does 1 through 100)

38.    Plaintiffs refer to paragraphs 1 through 37, and incorporate the same by reference as though fully set forth herein.

39.    Plaintiffs in the California class are employees who have been working for Defendants in California within four years of the date of filing this Complaint.  Plaintiffs and the class work/ed as non-exempt employees for Defendants pursuant to a compensation plan that resulted in variable and decreasing overtime rates for work performed, and in some instances, a decrease in overall pay despite an increase in hours

worked.

40.     Plaintiffs and all members of the California class regularly worked over eight (8) hours in one workday and forty (40) hours in one workweek for which they were not paid the correct hourly wage.  It is alleged that Defendants intentionally denied the California class wages which should have been paid and violated California Labor Code section 510 and applicable IWC wage orders by failing to pay wages as allowed by law.

41.     Labor Code section 200 defines "wages" as including all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.

42.     California Labor Code section 202 provides that all wages shall become due and payable not later than 72 hours after the employee provides notice of his intention to quit.  In this case, Defendants, and each of them, have refused and continue to refuse to pay Plaintiffs' wages.

43.     Pursuant to California Labor Code section 203, it is alleged that Defendants have willfully failed to pay without abatement or reduction, in accordance with Labor Code sections 201, 2015, 202, all of the wages of the Plaintiffs.  Defendants are aware that they owe the wages claimed, yet they have willfully failed to make payment.  As a result, Plaintiffs seek wages and penalties pursuant to Labor Code section 203.

44.     Plaintiff and members of the California class have been available and ready to receive wages owed to them, including overtime wages.

45.     Defendants' failure to pay Plaintiff's and the California class members'

wages due and owing Plaintiffs, as indicated in prior paragraphs, was willful; Defendants have knowingly refused to pay any portion of the amount due and owing Plaintiffs.

46.    Pursuant to Labor Code Sections 218.5 and 1194, Plaintiffs request the Court to award Plaintiff's reasonable attorneys' fees and costs incurred in this action. Plaintiffs also request all unpaid wages, waiting time penalties and interest.

## SECOND CAUSE OF ACTION

### (FLSA Overtime Violations, 29 U.S.C. §§201 et seq. Against Defendants Ecolab Inc. and Does 1 through 100)

47.    Plaintiffs refer to paragraphs 1 through 46, and incorporate the same by reference as though fully set forth herein.

48.    The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 207(a)(1).

49.    Plaintiffs are informed and believe and thereon allege that at all relevant times, Defendants were "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C.  § 203. At all relevant times, Plaintiff Miner and each member of the FLSA Collective worked for Defendants.

50.    Plaintiff Miner consents in writing to be a part of this action, pursuant to 29 U.S.C. § 216(b).  As this case proceeds, it is likely that other individuals will sign consent

forms and join as plaintiffs.

51.    Section 7(a)(1) of the FLSA, 29 U.S.C. 207(a)(1), requires employers to pay non-exempt employees who work longer than forty (40) hours in a workweek one and one-half times the employee's regular rate of pay for the hours worked in the workweek in excess of forty (40) in a workweek.  Defendants violated the FLSA by refusing to pay the FLSA Collective overtime as required by law.

52.    Throughout the statute of limitations period covered by these claims, Plaintiff and members of the FLSA class regularly worked in excess of forty (40) hours per workweek and continue to do so.

53.    At all relevant times, Defendants have operated under and continue to operate under a compensation structure that provided for an overtime rate that decreased as the employee's hours increased and, as a result, Defendants do/did not pay Plaintiffs at proper overtime rates for work in excess of forty (40) hours per workweek in violation of 29 U.S.C. §§ 201 et seq.

54.    Defendants' violations of the FLSA as alleged herein have been done in a willful and bad faith manner such that the FLSA Collective are entitled to damages equal to the amount of overtime premium pay within the three years preceding the filing of this complaint, plus periods of equitable tolling.  As a result of the aforesaid willful violations of the FLSA, overtime compensation has been unlawfully withheld by Defendants from Plaintiff Miner and similarly situated persons for which Defendants are liable under 29 U.S.C. § 216(b), together with an additional equal amount as liquidated damages, as well

as interest, reasonable attorneys' fees and costs.

55.    Plaintiff Miner, on behalf of himself and the FLSA Collective, seeks damages in the amount of all unpaid overtime compensation owed to him and the FLSA Collective, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

56.    The employment and work records for the Plaintiff and the FLSA Collective, such that they do exist, are in the exclusive possession, custody, and control of Defendants, and Plaintiff Miner is unable to state at this time the exact amount owing to him and the FLSA Collective.  Defendants are under a duty imposed by 29 U.S.C. § 211(c) and the regulations of the U.S. Department of Labor to maintain and preserve Plaintiff Miner's payroll and other employment records from which the amounts of the defendants' liability can be ascertained.

57.    Plaintiff Miner, on behalf of himself and the FLSA Collective, seeks recovery of attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION

### (Failure to Provide Accurate Itemized Wage Statements in Violation

### Of Labor Code § 226 Against Ecolab Inc. and Does 1 through 100)

58.    Plaintiffs refer to paragraphs 1 through 57, and incorporate the same by reference as though fully set forth herein.

59.    At all times relevant hereto, California Labor Code § 226 required

Defendants, at the time of each payment of wages, to furnish each of their employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an itemized statement in writing showing, among other things, the gross wages earned and total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 of any applicable order of the Industrial Welfare Commission.

60.     Plaintiff alleges that he and members of the California class are employees who are not exempt from payment of overtime under California law.

61.     Labor Code § 226, including subsection (e), provides that if an employer knowingly and intentionally fails to provide a statement itemizing, *inter alia,* the total hours worked by the employee, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000).

62.     Plaintiffs allege that within a year prior to filing of the complaint, as a pattern and practice, in violation of Labor Code § 226(a), Defendants have knowingly and intentionally failed to provide Plaintiffs and the California class with accurate itemized wage statements in writing showing all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked by each respective individual, including overtime worked.

63.     As a proximate result of Defendants' failure to provide accurate itemized

wages statements, Plaintiff and members of the California class have suffered actual damages and harm by being unable to determine their applicable hourly rate or the amount of overtime worked each pay period, which prevented them from becoming aware of these violations and asserting of their statutory protections under California law.

64.    Pursuant to Labor Code Section 226(e), Plaintiff and members of the California class are entitled to recover the greater of all actual damages or fifty dollars ($50.00) for the initial pay period in which a violation occurred and one hundred dollars ($100.00) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000.00)

## FOURTH CAUSE OF ACTION

**(Unfair Business Practices in Violation of Cal. Bus. & Prof. Code § 17200**

**Against Defendant Ecolab Inc. and Does 1 through 100)**

65.    Plaintiffs refer to paragraphs 1 through 64, and incorporate the same by reference as though fully set forth herein.

66.    This cause of action is being brought pursuant to Business and Professions Code Section 17200 et seq. and California case law, including *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.App.4th 163.

67.    It is alleged that Defendants have willfully failed to pay employees wages owed.  Defendants' failure to pay both current employees and past employees their wages, which are owed under California and Federal wage and hour laws pursuant to *Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21, constitutes an

unfair business practice under California Business and Professions Code section 17200 et seq. and pursuant to California case law, including *Harris v. Investor's Business Daily, Inc.* (2006) 138 Cal.App.4th 28.

68.    As a result of the conduct of Ecolab Inc. and Does 1 through 100, Defendants profited from breaking the law. Plaintiffs seek disgorgement of this unlawfully obtained benefit.

69.    California Business and Professions Code section 17203, under the authority of which a restitutionary order may be made, provides:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use of employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 282 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.

70.    As a result of the alleged aforesaid actions, Plaintiffs have suffered injury in fact and have lost money as a result of such unfair competition.

71.    In this case, it is requested that this Court order such restitution.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them in favor of themselves and the classes as follows:

**As to First Cause of Action for Failure to Pay Wages**

1. For certification of a class, a class representative, and class counsel, pursuant to this claim, consistent with the requirements of Fed. R. Civ. P. Rule 23;

2. For wages owed according to proof;

3. For prejudgment interest at the statutory rate;

4. For statutory penalties pursuant to law;

5. For reasonable attorneys' fees pursuant to Labor Code sections 218.5 and 1194;

6. For costs of suit; and

7. For any other and further relief that the Court considers just and proper.

**As to Second Cause of Action for FLSA Overtime Violations**

1. Designation of this action as a collective action on behalf of the Plaintiffs and the class they seek to represent pursuant to the Fair Labor Standards Act claims and a prompt issuance of notice pursuant to 29 U.S.C. §216(b), to all similarly situated members of the FLSA opt-in class apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. §216(b) and equitable tolling of the statute of limitations from the date of filing

this Complaint until the expiration of the deadline for filing consent to sue forms pursuant to 29 U.S.C. §216(b);

2.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA 29 U.S.C. §201 et seq.;

3.  For wages owed according to proof;

4.  For liquidated damages as provided by the FLSA;

5.  For prejudgment interest at the statutory rate;

6.  For reasonable attorneys' fees;

7.  For costs of suit; and

8.  For any other and further relief that the Court considers just and proper.

**As to Third Cause of Action for Failure to Provide Accurate Wages Statements**

1.  For certification of a class, a class representative, and class counsel, pursuant to this claim, consistent with the requirements of Fed. R. Civ. P. Rule 23;

2.  For an award of fifty dollars ($50.00) for the initial pay period in which a violation occurs and one hundred dollars ($100.00) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000.00);

3.  For an award of reasonable attorneys' fees and costs pursuant to Labor Code section 226(h);

4.  Injunctive relief pursuant to Labor Code section 226(h) to ensure Defendants' compliance with Labor Code section 226.

5.  For such other and further relief as the Court may deem appropriate.

## As to Fourth Cause of Action for Unfair Competition

1.  For certification of a class, a class representative, and class counsel, pursuant to this claim, consistent with the requirements of Fed. R. Civ. P. Rule 23;

2.  For an equitable order, ordering Defendants to pay all former and current non-exempt class employees all wages, interest, and penalties they are owed;

3.  For an appointment of a receiver to perform an accounting of all monies owed to these employees;

4.  For any and all injunctive relief this Court deems necessary pursuant to California Business and Professions Code section 17203;

5.  For prejudgment interest pursuant to Civil Code sections 3288 and 3291 on all amounts claimed; and

6.  For such other and further relief that the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial of their claims by jury to the extent authorized by law.

Dated:  March 24, 2017        HATHAWAY, PERRETT, WEBSTER, POWERS, CHRISMAN & GUTIERREZ, APC

By_____/s/_____
ALEJANDRO P. GUTIERREZ
Attorneys for Plaintiffs and the Class

Dated:  March 24, 2017        PALAY HEFELFINGER, APC

By_____/s/_____
DANIEL J. PALAY
Attorneys for Plaintiffs and the Class

1

Dated:  March 24, 2017            STRAUSS & STRAUSS, APC

2

3

4

5              By _____/s/_____
                    ARIS KARAKALOS
6                   Attorneys for Plaintiffs and the Class

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**