1
2
3
4
5
6                       **UNITED STATES DISTRICT COURT**
7                       **CENTRAL DISTRICT OF CALIFORNIA**
8
9    DOUG MINER, et al., individually and on )   Case No. CV 17-2313 FMO (JCx)
     behalf of all others similarly situated,  )
10                                             )
                    Plaintiffs,                )
11                                             )   **ORDER RE: MOTION FOR PRELIMINARY**
              v.                               )   **APPROVAL OF CLASS ACTION**
12                                             )   **SETTLEMENT**
     ECOLAB INC.,                              )
13                                             )
                    Defendant.                 )
14   _____  )

15        Having reviewed and considered all the briefing filed with respect to plaintiffs' Renewed

16   Motion for Preliminary Approval of Class Action and PAGA Settlement (Dkt. 174, "Motion"), and

17   the oral argument presented at the hearings on October 14, 2021, and January 20, 2022, the court

18   concludes as follows.

19                              **BACKGROUND**

20        On March 24, 2017, Doug Miner ("Miner") filed a class and collective action against

21   defendant Ecolab, Inc. ("defendant" or "Ecolab"), asserting claims on behalf of Service Specialists

22   and Senior Service Specialists ("Specialists") for: (1) failure to pay all wages due, Cal. Labor Code

23   § 510; (2) failure to pay overtime wages, Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201,

24   et seq.; (3) failure to pay all wages due to employees who left the company, Cal. Labor Code §

25   203; (4) failure to furnish accurate itemized wage statements, Cal. Lab. Code § 226; and (5) unfair

26   and unlawful business practices, Cal. Bus. & Prof. Code §§ 17200, et seq. (See Dkt. 1, Class

27   Action Complaint at ¶¶ 29-71 & p. 22-24). Miner subsequently filed a First Amended Complaint

28

("FAC"), adding a claim for civil penalties under the California Private Attorneys General Act ("PAGA"), California Labor Code §§ 2699, et seq.  (See Dkt. 30, FAC at ¶¶ 74, 78 & p. 27).

Defendant asserted that Miner entered into a valid arbitration agreement and sought to compel arbitration of both the PAGA and non-PAGA claims.  (See Dkt. 145, Court's Order of January 4, 2019, at 1).  In August 2017, the court denied defendant's Motion to Strike Class and Collective Action Claims, and to Compel Arbitration on the ground that Morris v. Ernst & Young, LLP, 834 F.3d 975 (9th Cir. 2016), precluded enforcement of the arbitration agreement.  (See id.). Defendant appealed to the Ninth Circuit.  (See id.).  In May 2018, the Supreme Court abrogated Morris.  See Epic Sys. Corp. v. Lewis, 138 S.Ct. 1612, 1632 (2018); (Dkt. 145, Court's Order of January 4, 2019, at 1).  Subsequently, the Ninth Circuit vacated this court's denial of the non-PAGA motion in light of Epic Systems, and remanded for further proceedings.  (See Dkt. 145, Court's Order of January 4, 2019, at 1-2).  In January 2019, the court compelled arbitration of Miner's non-PAGA claims, denied defendant's motion to strike/dismiss the representative PAGA claim, and stayed the action pending resolution of the arbitration.  (See id. at 12).

Subsequently, Miner and over 200 current and former Specialists ("Claimants") filed demands for arbitration against defendant with the American Arbitration Association ("AAA"). (Dkt. 174, Motion at 1).  Additionally, there were several Specialists who did not sign arbitration agreements that filed individual complaints in state court.  (Id.).  All the Claimants and state court litigants were represented by plaintiffs' counsel.  (See id. at 1-2).  After engaging in discovery, the parties filed cross-motions for summary judgment as to the lawfulness of the incentive plan in more than 40 arbitrations, and participated in a two-day evidentiary hearing with respect to the FLSA claims of two Claimants.  (Id. at 3); (Dkt. 174-6, Declaration of Alejandro P. Gutierrez [] ("Gutierrez Decl.") at ¶ 16).  "The five arbitrators to rule on the lawfulness of the [incentive p]lan all found that it complies with both federal and California law and granted judgment in Ecolab's favor."  (Dkt. 174, Motion at 3).

As a result of the unfavorable outcomes, Claimants sought to add claims for reporting time violations to their arbitrations. (See Dkt. 174, Motion at 3-4).  The reporting time claims were also added to the SAC and operative Third Amended Complaint ("TAC").  (Id. at 4); (Dkt. 171, TAC).

1  "The only arbitrator to rule on the merits of th[e reporting time] claims found in Ecolab's favor; one

2  other arbitrator found disputed material facts and determined that resolution would require an

3  evidentiary hearing." (Dkt. 174, Motion at 4). In any event, after analyzing volumes of

4  individualized data, plaintiffs' counsel "confirmed that, regardless of the substantive merits, the

5  potential value of [the reporting time claims] is limited, typically ranging from less than $100 per

6  [] Specialist on the low end to a few thousand dollars on the high end." (Id.); (Dkt. 174-6, Gutierrez

7  Decl. at ¶ 26 & Attachment at ¶ II).

8       The parties ultimately entered into a Settlement Agreement that resolved the claims in this

9  action. (Dkt. 174, Motion at 6-7). After the court denied the first two motions for preliminary

10 approval, the parties filed the TAC adding Glenn Payton ("Payton") (collectively with Miner,

11 "plaintiffs") as the named class plaintiff, and amended the prior settlement agreement. The parties

12 have defined the settlement class as "[a]ll individuals who have been employed by Ecolab in

13 California as a Service Specialist or Senior Service Specialist between March 24, 2013 and the

14 date preliminary approval is granted and who did not file an individual lawsuit or arbitration

15 demand asserting the same or similar claims as are asserted in this Action[.]" (Dkt. 174-3, Exh.

16 1, Settlement Agreement at ¶ 7) ("California Class"). The parties have defined the FLSA

17 settlement class as "[a]ll individuals who have been employed by Ecolab in California as a Service

18 Specialist or Senior Service Specialist between March 24, 2014 and the date preliminary approval

19 is granted and who did not file an individual lawsuit or arbitration demand asserting the same or

20 similar claims as are asserted in this Action[.]" (Dkt. 174-3, Exh. 1, Settlement Agreement at ¶ 8)

21 ("FLSA Collective Action"). Payton is the proposed class representative for both the California

22 Class and the FLSA FLSA Collective Action.[1] (See id. at ¶¶ 7-8). Additionally, the Settlement

23 Agreement includes a PAGA class, which consists of "all individuals employed by Ecolab in

24 California as a Service Specialist or Senior Service Specialist between March 23, 2016 and the

25 date preliminary approval is granted[.]" (Id. at ¶ 9(h)) ("PAGA Class"). The PAGA Class also

26

27  _____

28     [1] Although only Payton is the proposed class representative for both the California Class and
    the FLSA Collective Action, the court will at times refer to "plaintiffs."

1  includes Claimants, i.e., those Specialists who filed individual lawsuits or arbitrations since the

2  individual proceedings did not resolve any PAGA claims.  (See Dkt. 174, Motion at 7 n. 3).

3        Pursuant to the settlement, defendant will pay a non-reversionary gross settlement amount

4  of $181,687.50, (Dkt. 174-3, Exh. 1, Settlement Agreement at ¶ 14); (Dkt. 174, Motion at 7), which

5  will be used to pay class members, participating FLSA Collective Action members, the PAGA

6  recipients, the class and PAGA representatives' service payments, settlement administration

7  costs, the PAGA payment to the California Labor & Workforce Development Agency ("the LWDA"),

8  and attorney's fees and costs.  (Dkt. 174-3, Exh. 1, Settlement Agreement at ¶¶ 34).  The

9  settlement provides for up to $33,375 (approximately 18.4% of the gross settlement amount) in

10  attorney's fees, (id. at ¶ 40); costs not to exceed $8,000, (id.); service payments of $2,250 for

11  Miner[2] and $750 for Payton, (id. at ¶ 41); and a payment of $18,750 to the LWDA.  (Id. at ¶ 48).

12  Also, the proposed settlement administrator, Simpluris, shall be paid no more than $15,000 from

13  the gross settlement amount.  (Id. at ¶¶ 9(d), 40).  The resulting net settlement amount is expected

14  to be at least $103,562.50, which consists of $97,312.50 for the class and FLSA claims, and

15  $6,250 for the 25% PAGA employee allocation.  (Dkt. 174, Motion at 7).  California Class and

16  FLSA Collective Action members will receive a portion of the net settlement amount based on the

17  following formula:  (1) $50 will be allocated to those who opt-in to the FLSA Collective Action; (2)

18  12% of the remaining amount will be split equally among California Class members who worked

19  for Ecolab in California and were terminated or resigned between March 24, 2014, and the date

20  of preliminary approval, for the Labor Code § 203 claims; (3) 8% of the remaining amount will be

21  split equally among California Class members who worked in California between March 24, 2016,

22  and the date of preliminary approval, for the Labor Code § 226 claims; (4) 50% of the remaining

23  amount will be split among California Class members who spent the majority of their time working

24  night shifts based on the number of workweeks worked between March 24, 2013, and the date

25  of preliminary approval; and (5) 30% of the remaining amount will be split among California Class

26

27

28  [2] The service payment to Miner is for his role as the PAGA representative.  (Dkt. 174, Motion at 7).

1  members who spent a majority of their time working day shifts based on the number of workweeks

2  worked between March 24, 2013, and the date of preliminary approval.  (Dkt. 174-3, Exh. 1,

3  Settlement Agreement at ¶ 34); (Dkt. 174, Motion at 9-10).  The PAGA allocation will be distributed

4  among all PAGA recipients.  (Dkt. 174, Motion at 7).

5  In their Motion, plaintiffs seek an order (1) preliminarily approving the proposed settlement;

6  (2) certifying the proposed settlement class; (3) appointing Miner and Payton as class

7  representatives; (4) appointing Hathaway, Perrett, Webster, Powers, Chrisman & Gutierrez APC

8  ("HPWPCG APC");  Palay Hefelfinger APC ("PH APC"); and Strauss & Strauss, APC ("SS APC")

9  as class counsel; (5) appointing Simpluris as settlement administrator; (6) approving and ordering

10  dissemination of the proposed class notice and forms; and (7) scheduling a final approval hearing.

11  (See Dkt. 174, Notice of Motion at ii-iv).

12  **LEGAL STANDARDS**

13  I.  CLASS CERTIFICATION.

14  At the preliminary approval stage, the court "may make either a preliminary determination

15  that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision

16  as to the appropriateness of class certification."[3] Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149,

17  *3 (S.D. Fla. 2010) (citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc.,

18  2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620,

19  117 S.Ct. 2231, 2248 (1997) ("Amchem")) ("Parties seeking class certification for settlement

20  purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]").   In the

21  settlement context, a court must pay "undiluted, even heightened, attention" to class certification

22  requirements.  Amchem, 521 U.S. at 620, 117 S.Ct. at 2248; In re Volkswagen "Clean Diesel"

23  Mktg., Sales Pracs., & Prods. Liab. Litig., 895 F.3d 597, 606 (9th Cir. 2018) (same).  "Such

24  attention is of vital importance, for a court asked to certify a settlement class will lack the

25  opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as

26  they unfold."  Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

27

28  _____

   [3] All "Rule" references are to the Federal Rules of Civil Procedure.

A party seeking class certification must first demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts refer to these requirements by the following shorthand: "numerosity, commonality, typicality and adequacy of representation[.]" Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012), overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir. 2022) (en banc) ("Olean Wholesale"). In addition to fulfilling the four prongs of Rule 23(a), the proposed class must meet at least one of the three requirements listed in Rule 23(b).[4] See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011) ("Dukes").

---

[4] Rule 23(b) is satisfied if:

(1) prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1)-(3).

1   "Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that

2   the prerequisites of both Rule 23(a) and" the applicable Rule 23(b) provision have been satisfied.

3   Olean Wholesale, 31 F.4th at 664 (internal quotation marks omitted).  A plaintiff "must prove the

4   facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied

5   by a preponderance of the evidence."  Id. at 665.  However, courts need not consider the Rule

6   23(b)(3) issues regarding manageability are "not a concern in certifying a settlement class where,

7   by definition, there will be no trial."  In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 556-57

8   (9th Cir. 2019) (en banc) ("In re Hyundai").

9   II.    FAIRNESS OF CLASS ACTION SETTLEMENT.

10   Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class

11   proposed to be certified for purposes of settlement – may be settled . . . only with the court's

12   approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of th[e]

13   class members, including the named plaintiffs, whose rights may not have been given due regard

14   by the negotiating parties."  Officers for Just. v. Civ. Serv. Comm'n of the City & Cty. of S.F., 688

15   F.2d 615, 624 (9th Cir. 1982).  Whether to approve a class action settlement is "committed to the

16   sound discretion of the trial judge."  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th

17   Cir. 1992) (internal quotation marks omitted).

18   Approval of a class action settlement requires a two-step process – preliminary approval

19   and the dissemination of notice to the class, followed by a later final approval.  See Spann v. J.C.

20   Penney Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016).  Although "[c]loser scrutiny is reserved for

21   the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011),

22   "the showing at the preliminary approval stage – given the amount of time, money, and resources

23   involved in, for example, sending out . . . class notice[] – should be good enough for final

24   approval."  Spann, 314 F.R.D. at 319; see 4 Newberg on Class Actions § 13:10 (5th ed.) (Supp.

25   2021) ("[S]ending notice to the class costs money and triggers the need for class members to

26   consider the settlement, actions which are wasteful if the proposed settlement [is] obviously

27   deficient from the outset.").  The court may grant preliminary approval and direct notice in a

28   reasonable manner to all class members who would be bound by the settlement if the parties

provide sufficient information to the court to show that the court will likely be able to: (1) "approve the proposal under Rule 23(e)(2)"; and (2) "certify the class for purposes of judgment on the [settlement] proposal." Fed. R. Civ. P. 23(e)(1)(B); see Macy v. GC Services Limited Partnership, 2019 WL 6684522, *1 (W.D. Ky. 2019) ("The standard for preliminary approval was codified in 2018, with Rule 23 now providing for notice to the class upon the parties' showing that the court will likely be able to approve the proposed settlement under the final-approval standard contained in Rule 23(e)(2)."); 4 Newberg on Class Actions § 13:10 (5th ed.) ("In 2018, Congress codified this approach into Rule 23.  Rule 23(e)(1)(B) now sets forth the grounds for the initial decision to send notice of a proposed settlement to the class[.]").

"At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Spann, 314 F.R.D. at 319 (internal quotation marks omitted); see Bronson v. Samsung Elecs. Am., Inc., 2019 WL 5684526, *7 (N.D. Cal. 2019) ("Preliminary approval is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (internal quotation marks omitted); see also 2018 Adv. Comm. Notes to Amendments to Rule 23(e)(1) (The types of information that should be provided to the court in deciding whether to send notice – i.e., that it will likely approve the settlement under Rule 23(e)(2) and certify the class for purposes of settlement – "depend on the specifics of the particular class action and proposed settlement." "[G]eneral observations" as to the types of information that should be provided include, but are not limited to, the following:  (1) "the extent and type of benefits that the settlement will confer on the members of the class" and if "funds are . . . left unclaimed, the settlement agreement ordinarily should address the distribution of those funds"; (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation"; (3) "[i]nformation about the extent of discovery completed in the litigation or in parallel actions"; (4) "information about the existence

1   of other pending or anticipated litigation on behalf of class members involving claims that would

2   be released under the proposal"; (5) "the proposed handling of an award of attorney's fees under

3   Rule 23(h)"; (6) "any agreement that must be identified under Rule 23(e)(3)"; and (7) "any other

4   topic that [the parties] regard as pertinent to the determination whether the proposal is fair,

5   reasonable, and adequate.").

6                                                   **DISCUSSION**

7   I.        CLASS CERTIFICATION.[5]

8             A.        Rule 23(a) Requirements.

9                       1.        **Numerosity**.

10          A putative class may be certified only if it "is so numerous that joinder of all members is

11  impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  "Although the size of the class is not the sole

12  determining factor, . . . where a class is large in numbers, joinder will usually be impracticable."

13  A.B. v. Hawaii State Department of Education, 30 F.4th 828, 835 (9th Cir. 2022) (internal quotation

14  marks omitted); see Jordan v. Cty. of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.), vacated on

15  other grounds by Cty. of Los Angeles v. Jordan, 459 U.S. 810, 103 S.Ct. 35 (1982) (class sizes

16  of 39, 64, and 71 are sufficient to satisfy the numerosity requirement).  "As a general matter,

17  courts have found that numerosity is satisfied when class size exceeds 40 members[.]"  Slaven

18  v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); see Tait v. BSH Home Appliances Corp.,

19  289 F.R.D. 466, 473-74 (C.D. Cal. 2012) (same).

20          Here, the class is so numerous that joinder is impracticable.  The settlement class includes

21  approximately 340 members, (see Dkt. 174, Motion at 10), which easily exceeds the minimum

22  threshold for numerosity.

23                      2.        **Commonality**.

24          The commonality requirement is satisfied if "there are questions of law or fact common to

25  the class[.]"  Fed. R. Civ. P. 23(a)(2).  Proof of commonality under Rule 23(a) is "less rigorous"

26  _____

27          [5]  The court finds that the FLSA Collective Action should be conditionally certified.  See, e.g.,
    Campbell v. City of Los Angeles, 903 F.3d 1090, 1112-13 (9th Cir. 2018) (noting that the FLSA

28  "imposes a lower bar than Rule 23").

1  than the related preponderance standard under Rule 23(b)(3).  See Hanlon v. Chrysler Corp., 150

2  F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds as recognized by Castillo v. Bank of

3  Am., NA, 980 F.3d 723 (9th Cir. 2020); Mazza, 666 F.3d at 589.  Commonality requires plaintiffs

4  to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity

5  will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes,

6  564 U.S. at 350, 131 S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168,

7  1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations

8  share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full

9  presentation of all claims for relief.") (internal quotation marks omitted).   "The plaintiff must

10  demonstrate the capacity of classwide proceedings to generate common answers to common

11  questions of law or fact that are apt to drive the resolution of the litigation." Mazza, 666 F.3d at

12  588 (internal quotation marks omitted).  "This does not, however, mean that every question of law

13  or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question

14  of law or fact." Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (emphasis

15  and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality

16  as a "limited burden[,]" stating that it "only requires a single significant question of law or fact").

17  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a

18  common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150

19  F.3d at 1019.

20        This case involves common class-wide questions that are apt to drive the resolution of the

21  litigation.  Here, the central question is the lawfulness of defendant's incentive compensation plan

22  and other policies, and whether they impermissibly resulted in, for example, defendant's failure

23  to pay full minimum wages and overtime compensation as required under California law and the

24  FLSA. (See Dkt. 174, Motion at 11-12).  Under the circumstances, the court finds that Payton has

25  satisfied the commonality requirement.  See, e.g., McConville v. Renzenberger, Inc., 2019 WL

26  9408103, *5 (C.D. Cal. 2019) ("This case involves common class-wide issues that are apt to drive

27  the resolution of plaintiff's claims.  There are significant common questions as to whether

28  [defendant]'s meal-and rest-period policies were legally valid; whether [defendant] failed to pay

1   all straight and overtime wages owed to class members; and whether [defendant] failed to provide

2   accurate, itemized wage statements."); Taylor v. FedEx Freight, Inc., 2016 WL 1588405, *3 (E.D.

3   Cal. 2016) ("Whether [defendant's] mileage pay plan fail[ed] to separately compensate for all time

4   worked including non-driving activities, and whether such failure [was] unlawful under the Labor

5   Code and IWC Wage Order . . . are common questions of law and facts to the proposed

6   settlement class. These common questions of law or fact shared by all the proposed settlement

7   class members are sufficient to satisfy the commonality requirement."); Clesceri v. Beach City

8   Investigations & Protective Servs., Inc., 2011 WL 320998, *5 (C.D. Cal. 2011) (finding

9   commonality requirement met for preliminary approval because "the settlement class members

10  did not receive proper rest breaks; [] the settlement class members did not receive proper meal

11  breaks; [and] the settlement class members did not receive adequate wage statements in

12  compliance" with the Labor Code).

13              3.      **Typicality**.

14          "Typicality refers to the nature of the claim or defense of the class representative, and not

15  to the specific facts from which it arose or the relief sought."   Ellis v. Costco Wholesale Corp., 657

16  F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted).   To demonstrate typicality,

17  plaintiff's claims must be "reasonably co-extensive with those of absent class members[,]"

18  although "they need not be substantially identical." Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d

19  at 984 ("Plaintiffs must show that the named parties' claims are typical of the class.").   "The test

20  of typicality is whether other members have the same or similar injury, whether the action is based

21  on conduct which is not unique to the named plaintiffs, and whether other class members have

22  been injured by the same course of conduct." Ellis, 657 F.3d at 984 (internal quotation marks

23  omitted).

24          Here, the claims of named plaintiff Payton are typical of the claims of the class.   Payton,

25  like the putative class members, was employed by defendant during the relevant time period, and

26  was paid pursuant to the same compensation plan and employment policies as the putative class

27  members.   (See Dkt. 174, Motion at 13-14); (Dkt. 171, TAC).   Thus, Payton's claims and the

28  claims of the class arise from the same factual basis and are based on the same legal theories,

1    <u>i.e.</u>, that defendant's incentive compensation plan failed to guarantee that class members would

2    be paid proper minimum wages and overtime compensation, and otherwise violated their rights

3    under California and federal law by, for instance, requiring employees to respond to customer calls

4    outside of regular working hours.  (<u>See</u> Dkt. 174, Motion at 2-5, 13-14).  Finally, defendant has not

5    raised any facts that would subject Payton "to unique defenses which threaten to become the

6    focus of the litigation."  <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992).  In short,

7    Payton has satisfied the typicality requirement.

8                    4.    **Adequacy of Representation**.

9          "The named Plaintiffs must fairly and adequately protect the interests of the class."  <u>Ellis</u>,

10   657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)).  "To determine whether [the] named plaintiffs will

11   adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and

12   their counsel have any conflicts of interest with other class members and (2) will the named

13   plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  <u>Id.</u> (internal

14   quotation marks omitted).  "Adequate representation depends on, among other factors, an

15   absence of antagonism between representatives and absentees, and a sharing of interest

16   between representatives and absentees."  <u>Id.</u>

17        Here, the proposed class representative, Payton, has no individual claims separate from

18   the class claims, (<u>see</u>, <u>generally</u>, Dkt. 171, TAC), and does not appear to have any conflicts of

19   interest with the absent class members.  (<u>See</u> Dkt. 174, Motion at 14); (Dkt. 174-2, Declaration

20   of Glenn Payton in Support of Renewed Motion for Preliminary Approval [] ("Payton Decl.") at ¶¶

21   15-16, 24); <u>see</u>, <u>e.g.</u>, <u>Barbosa v. Cargill Meat Sols. Corp</u>, 297 F.R.D. 431, 442 (E.D. Cal. 2013)

22   ("[T]here is no apparent conflict of interest between the named Plaintiffs' claims and those of the

23   other Class Members' – particularly because the named Plaintiffs have no separate and individual

24   claims apart from the Class.").  Moreover, Payton states that he "will always put the best interest

25   of the other employees first while performing [his] duties as a class representative."  (Dkt. 174-2,

26   Payton Decl. at ¶ 24).   In short, "[t]he adequacy-of-representation requirement is met here

27   because Plaintiff[] ha[s] the same interests as the absent Class Members[.]"  <u>Barbosa</u>, 297 F.R.D.

28   at 442.

1    Finally, as noted earlier, adequacy "also factors in competency and conflicts of class

2    counsel." Amchem, 521 U.S. at 626 n. 20, 117 S.Ct. at 2251.  Here, the Settlement Agreement

3    provides that the court appoint HPWPCG APC; PH APC; and SS APC as class counsel. (See Dkt.

4    174-3, Exh. 1, Settlement Agreement at ¶ 9(c)).  Having reviewed the declarations of proposed

5    class counsel, (see Dkt. 174-3, Declaration of Brian D. Hefelfinger [] (Hefelfinger Decl.") at ¶¶ 3,

6    6-8); (Dkt. 174-4, Declaration of Aris Karakalos [] ("Karakalos Decl.") at ¶¶ 32-45); (Dkt.174-5,

7    Declaration of Daniel J. Palay [] ("Palay Decl.") at ¶¶ 3-5); (Dkt. 174-6, Gutierrez Decl. at ¶¶ 3-5),

8    the court finds that counsel are competent, and that there are no issues as to the adequacy of

9    representation.  See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the

10   Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent

11   counsel who have litigated numerous class action cases.").

12       B.    Rule 23(b) Requirements.

13       Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can

14   be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal

15   quotation marks omitted).  The rule requires two different inquiries, specifically a determination as

16   to whether:  (1) "questions of law or fact common to class members predominate over any

17   questions affecting only individual members[;]" and (2) "a class action is superior to other available

18   methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

19           1.    **Predominance**.

20       "[T]he general rule [is] that predominance is easier to satisfy in the settlement context."

21   Jabbari v. Farmer, 965 F.3d 1001, 1006 (9th Cir. 2020).  "To determine whether a class satisfies

22   the [predominance] requirement, a court pragmatically compares the quality and import of

23   common questions to that of individual questions." Id. at 1005.  "[T]he predominance analysis

24   under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the

25   case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by

26   representation." Abdullah, 731 F.3d at 964 (internal quotation marks omitted); see Amchem, 521

27   U.S. at 623, 117 S.Ct. at 2249 ("The Rule 23(b)(3) predominance inquiry tests whether proposed

28   classes are sufficiently cohesive to warrant adjudication by representation.").  "If a common

1   question will drive the resolution [of the litigation], even if there are important questions affecting
2   only individual members, then the class is sufficiently cohesive to warrant adjudication by
3   representation." Jabbari, 965 F.3d at 1005 (internal quotation marks omitted); see Abdullah, 731
4   F.3d at 964 ("Rule 23(b)(3) requires [only] a showing that questions common to the class
5   predominate, not that those questions will be answered, on the merits, in favor of the class.")
6   (internal quotation marks omitted) (brackets in original).  Finally, the class damages must be
7   sufficiently traceable to plaintiffs' liability case.  See Comcast Corp. v. Behrend, 569 U.S. 27, 35,
8   133 S.Ct. 1426, 1433 (2013).

9       For the reasons discussed above, see supra at § I.A.2., the court is persuaded that
10   common questions predominate over individual questions. See Tyson Foods, Inc. v. Bouaphakeo,
11   577 U.S. 442, 453, 136 S.Ct. 1036, 1045 (2016) ("When one or more of the central issues in the
12   action are common to the class and can be said to predominate, the action may be considered
13   proper under Rule 23(b)(3) even though other important matters will have to be tried separately,
14   such as damages or some affirmative defenses peculiar to some individual class members.")
15   (internal quotation marks omitted); Senne v. Kansas City Royals Baseball Corp., 934 F.3d 918,
16   938 (9th Cir. 2019) ("[P]redominance in employment cases is rarely defeated on the grounds of
17   differences among employees so long as liability arises from a common practice or policy of an
18   employer.") (internal quotation marks omitted).  Finally, the relief sought applies to all class
19   members and is traceable to Payton's liability case.  See Comcast, 569 U.S. at 35, 133 S.Ct. at
20   1433.  In short, the court is persuaded that "[a] common nucleus of facts and potential legal
21   remedies dominates this litigation."  Hanlon, 150 F.3d at 1022.

22              2.   **Superiority**.

23       "The superiority inquiry under Rule 23(b)(3) requires determination of whether the
24   objectives of the particular class action procedure will be achieved in the particular case" and
25   "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."
26   Hanlon, 150 F.3d at 1023.  Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to
27   superiority.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).

28

1   The first factor considers "the class members' interests in individually controlling the
2   prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs
3   against class certification where each class member has suffered sizeable damages or has an
4   emotional stake in the litigation."  Barbosa, 297 F.R.D. at 444.  Here, Payton does not assert
5   claims for emotional distress, nor is there any indication that the amount of damages any individual
6   class member could recover is significant or substantially greater than the potential recovery of
7   any other class member.  (See, generally, Dkt. 171, TAC); (Dkt. 174, Motion at 12) (stating that
8   "there is no realistic path for any individual claimant to recover any damages outside of the
9   proposed settlement").  The alternative method of resolution – pursuing individual claims for a
10  relatively modest amount of damages – would likely never be brought, as "litigation costs would
11  dwarf potential recovery."  Hanlon, 150 F.3d at 1023; see Leyva v. Medline Indus., Inc., 716 F.3d
12  510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential
13  individual monetary recovery, class certification may be the only feasible means for them to
14  adjudicate their claims.  Thus, class certification is also the superior method of adjudication.");
15  Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537 (C.D. Cal. 2011) ("Given the small size
16  of each class member's claim, class treatment is not merely the superior, but the only manner in
17  which to ensure fair and efficient adjudication of the present action.").  In short, "there is no
18  evidence that Class members have any interest in controlling prosecution of their claims
19  separately nor would they likely have the resources to do so."  Munoz v. PHH Corp., 2013 WL
20  2146925, *26 (E.D. Cal. 2013).

21  The second factor is "the extent and nature of any litigation concerning the controversy
22  already begun by or against class members[.]"  Fed. R. Civ. P. 23(b)(3)(B).  While any class
23  member who wishes to control his or her own case may opt out of the class, see Fed. R. Civ. P.
24  23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling
25  their own litigation[.]"  2 Newberg on Class Actions § 4:70 (5th ed.) (emphasis omitted).  Here,
26  while numerous employees filed individual state-court and arbitration claims, Payton asserts
27  claims on behalf of individuals who did not file individual claims.  (See Dkt. 174, Motion at 12).

28

1    The third factor is "the desirability or undesirability of concentrating the litigation of the

2    claims in the particular forum[,]" and the fourth factor is "the likely difficulties in managing a class

3    action." Fed. R. Civ. P. 23(b)(3)(C)-(D). As noted above, "[i]n the context of settlement . . . the

4    third and fourth factors are rendered moot and are irrelevant." Barbosa, 297 F.R.D. at 444; see

5    Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class

6    certification, a district court need not inquire whether the case, if tried, would present intractable

7    management problems, . . . for the proposal is that there be no trial.") (citation omitted); In re

8    Hyundai, 926 F.3d at 556-57 ("The criteria for class certification are applied differently in litigation

9    classes and settlement classes. In deciding whether to certify a litigation class, a district court

10   must be concerned with manageability at trial. However, such manageability is not a concern in

11   certifying a settlement class where, by definition, there will be no trial.").

12   The only factors in play here weigh in favor of class treatment. Further, the filing of

13   separate suits by potentially thousands of other class members "would create an unnecessary

14   burden on judicial resources." Barbosa, 297 F.R.D. at 445. Under the circumstances, the court

15   finds that the superiority requirement is satisfied.

16   II.   FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED

17         SETTLEMENT.

18         A.   The Settlement is the Product of Arm's-Length Negotiations.

19   Pursuant to Rule 23(e)(2)(B), the court must evaluate whether the settlement was

20   negotiated at arm's length. Here, plaintiffs' counsel conducted extensive discovery, including Rule

21   30(b)(6) depositions, and "vigorously investigated and contested the claims at issue" in connection

22   with the individual arbitrations and state court actions. (See Dkt. 174, Motion at 15, 18).

23   Defendant produced "volumes of employee-specific documents, which Counsel analyzed,

24   including data regarding time-keeping, customer invoices, pay, overtime records, emails, and call

25   logs." (Id. at 15). The parties engaged in settlement negotiations only after rulings were obtained

26   in numerous individual arbitrations and state-court actions. (See id. at 18); (Dkt. 174-6, Gutierrez

27   Decl. at ¶ 16) (stating that the arbitration proceedings were "enlightening in regard to the strengths

28   and weaknesses of the class claims, and [] informed the settlement analyses").

Based on the evidence and record before the court, the court is persuaded that the parties thoroughly investigated and considered their own and the opposing parties' positions.  The parties had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there is no evidence that the settlement is "the product of fraud or overreaching by, or collusion between, the negotiating parties[.]"  Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (internal quotation marks omitted).

> B.  The Amount Offered in Settlement Falls Within a Range of Possible Judicial Approval and Is a Fair and Reasonable Outcome for Class Members.

> > 1.  **Recovery for Class Members.**

As noted above, class members[6] will share in a non-reversionary gross settlement amount of $181,687.50, (Dkt. 174-3, Exh. 1, Settlement Agreement at ¶ 14); (Dkt. 174, Motion at 7).   If the requested attorney's fees and costs, the LWDA payment, settlement administration costs, and the service awards are approved, the average recovery per class member is expected to be $300. (Dkt. 174, Motion at 8); (Dkt. 174-6, Gutierrez Decl. at ¶ 28).  According to plaintiffs' counsel, the value of the non-PAGA class claims is approximately $390,000, and the theoretical value of the PAGA claims is approximately $1.74 million.  (Dkt. 174, Motion at 16); (Dkt. 174-6, Guteirrez Decl. at ¶¶ 22-24).  Plaintiffs' counsel states that the settlement amount is reasonable because "the value of the overtime claim should be discounted almost entirely to zero" since all five arbitrators that have ruled on the merits of the overtime claim decided it in defendant's favor, and because the California Supreme Court's decision in Oman v. Delta Air Lines, Inc., 9 Cal.5th 762 (2020) undermined the incentive plan claims, the core of plaintiffs' lawsuit.  (Dkt. 174-6, Gutierrez Decl. at ¶ 24); (Dkt. 174, Motion at 5-6, 16).  Also, the settlement value of the PAGA claim is lower because (1) the reporting time claims were not included in the original complaint or PAGA letter; (2) the only arbitrator to rule on the merits of the reporting time claims decided them in defendant's favor; (3) the court has discretion to reduce default PAGA penalties; and (4) plaintiffs would expect defendant to challenge the manageability of the PAGA claims if the case were to be litigated.  (Dkt.

---

[6]  The FLSA Collective Action members and the PAGA recipients will also share in this amount.

174, Motion at 16); (see also id. at 25-26); (Dkt. 174-6, Gutierrez Decl. at ¶¶ 25-27) (addressing value of PAGA and reporting time claims).  Finally, the existence of the class waivers would make it impossible to litigate this case on a class wide basis.  (Dkt. 174, Motion at 16).

Based on the above, the court is persuaded that the settlement is fair, reasonable, and adequate, particularly when viewed in light of the litigation risks in this case and the costs, risks, and delay of trial and appeal.  See Fed. R. Civ. P. 23(e)(1)(B)(i) & (e)(2)(C)(i); 2018 Adv. Comm. Notes to Amendments to Rule 23(e)(1) (The types of information that should be provided to the court deciding whether to grant preliminary approval includes, among other things:  (1) "the extent and type of benefits that the settlement will confer on the members of the class"; and (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation").  In other words, the risks of continued litigation are significant.  Weighed against those risks, and coupled with the delays associated with continued litigation, the court is persuaded that the benefits to the class fall within the range of reasonableness.  See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (ruling that "the Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, [wa]s fair and adequate"); In re Uber, 2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval of settlement that was worth 7.5% or less of the expected value); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted).  Finally, the settlement promotes enforcement of wage and hour laws in that it provides for recovery for the PAGA claim.[7]  (See 174-3, Settlement Agreement at ¶ 48).

---

[7]  Although the LWDA received notice of the settlement, (see Dkt. 174-4, Karakalos Decl. at ¶ 6), it did not object or respond, which the court construes as consent to the proposed settlement. See Echavez v. Abercrombie & Fitch Co., Inc., 2017 WL 3669607, *3 (C.D. Cal. 2017) ("[T]he Court finds persuasive that LWDA was invited to file a response to the proposed settlement agreement in this case and elected not to file any objections or opposition thereto.  The Court infers LWDA's non-response is tantamount to its consent to the proposed settlement terms, namely the proposed PAGA penalty amount.").

1          2.      **Release of Claims**.

2          The court must also consider whether the settlement contains an overly broad release of

3    liability.  See 4 Newberg on Class Actions § 13:15 (5th ed.) ("Beyond the value of the settlement,

4    courts [have] rejected preliminary approval when the proposed settlement contain[s] obvious

5    substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus

6    Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed

7    settlement that provided defendant a "nationwide blanket release" in exchange for payment "only

8    on a claims-made basis[,]" without the establishment of a settlement fund or any other benefit to

9    the class).  Here, class members who do not exclude themselves from the settlement will release

10   "any and all federal law (other than the FLSA), California state law, and local wage-and-hour

11   claims . . . whether known or unknown, . . . which were or could have been asserted in the

12   Action[.]"[8] (Dkt. 174-3, Settlement Agreement at ¶ 51).  The release extends to the date the court

13   grants preliminary approval.  (See Dkt. 181, Supplemental Declaration of Aris Karakalos in

14   Support of Renewed Motion for Preliminary Approval [] at ¶ 5); (Dkt. 181-1, Exh. 1, First

15   Amendment to Class, Collective, and PAGA Settlement and Release Agreement ("Amendment")

16   at ¶¶ 1-2).

17        Under the circumstances, the court finds that the release adequately balances fairness to

18   plaintiff and the absent class members with defendant's business interest in ending this litigation.

19   See, e.g., Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest

20   in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness

21   to absent class member[s]").

22        C.      The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the

23               Class Representatives.

24        Pursuant to Rule 23(e)(2)(D), the court must evaluate whether the settlement "treats class

25   members equitably relative to each other."  One of the areas the court must scrutinize carefully

26

27   _____

28        [8] Class members that opt-into the FLSA Collective Action will also release claims arising under
     the FLSA.  (Dkt. 174-3, Settlement Agreement at ¶ 52).

is "[i]ncentive awards [which] are payments to class representatives for their service to the class in bringing the lawsuit." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). The Ninth Circuit has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Id. The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. See id. at 1165. "In deciding whether [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, the settlement provides that class counsel may request service payments for Miner and Payton of no more than $2,250 to Miner and $750 to Payton. (See Dkt. 174-3, Settlement Agreement at ¶ 41). Under the circumstances here, the court tentatively finds that the requested incentive payments are reasonable.

D.    Class Notice and Notification Procedures.

Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005); Low v. Trump Univ., LLC, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness.") (internal quotation marks omitted). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks

1   omitted); see Gooch v. Life Invs. Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012) (Settlement

2   notices "are sufficient if they inform the class members of the nature of the pending action, the

3   general terms of the settlement, that complete and detailed information is available from the court

4   files, [and] that any class member may appear and be heard at the hearing[.]").  The notice should

5   provide sufficient information to allow class members to decide whether they should accept the

6   benefits of the settlement, opt out and pursue their own remedies, or object to the terms of the

7   settlement but remain in the class.  See In re Integra Realty Res., Inc., 262 F.3d 1089, 1111 (10th

8   Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise'

9   the class members of the terms of the proposed settlement and of their options.") (internal

10  quotation marks omitted).

11        Here, class members will receive notice by first class mail and email, (see Dkt. 174-3,

12  Settlement Agreement at ¶ 18), which will consist of the Notice of Proposed Settlement and Final

13  Approval Hearing, (see Dkt. 181-1, Amendment, Exh. A, "Notice"), Opt-Out Form, (id. at ECF

14  6770), FLSA Opt-In Form and Release of Claims Instructions with FLSA Opt-In and Release of

15  Claims Form, (id. at ECF 6771-72).  The Notice describes the nature of the action and the claims

16  alleged.  (See id., Notice at ¶ II); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii).  It provides the

17  definition of the class, (see Dkt. 181, Amendment, Exh. A, Notice at 1 & ¶ I); see also Fed. R. Civ.

18  P. 23(c)(2)(B)(ii), and explains the terms of the settlement, including the settlement amount, the

19  distribution of that amount, and the release.  (See Dkt. 181, Amendment, Exh. A, Notice at ¶¶ IV-

20  VI).  It includes an explanation that lays out the class members' options under the settlement: they

21  may remain in the class, object to the settlement but still remain in the class, or exclude

22  themselves from the settlement and pursue their claims separately against defendant.  (See id.

23  at 1 & ¶ VII); see also Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).  The Notice also explains the procedures

24  for objecting to the settlement, (see Dkt. 181, Amendment, Exh. A, Notice at ¶ VII), and provides

25  information about the Final Fairness Hearing.  (See id.).  Finally, the parties request that Simpluris

26  be appointed as settlement administrator to implement the notice process.  (See Dkt. 174, Notice

27  of Motion at ¶ 5).

28

Based on the foregoing, the court finds there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members.  Under the circumstances, the court finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members and comply with the requirements of due process.

E.     Summary.

The court's preliminary evaluation of the Settlement Agreement does not disclose grounds to doubt its fairness "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys." Manual for Complex Litigation § 21.633 at 321 (4th ed. 2004); see also Spann, 314 F.R.D. at 323.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1.     Plaintiffs' Renewed Motion for Preliminary Approval of Class Action and PAGA Settlement **(Document No. 174)** is **granted** upon the terms and conditions set forth in this Order.

2.  The court preliminarily certifies the California Class, as defined in ¶ 7 of the Settlement Agreement (Dkt. 174-3), for the purposes of settlement.

3.  The court conditionally certifies the FLSA Collective Action, as defined in ¶ 8 of the Settlement Agreement (Dkt. 174-3), for purposes of settlement.

4.  The court preliminarily appoints Glenn Payton as the Rule 23 California Class and the FLSA Collective Action representative and Doug Miner as the PAGA representative for settlement purposes.

5.  The court preliminarily appoints HPWPCG APC; PH APC; and SS APC as class counsel for settlement purposes.

6.  The court preliminarily finds that the terms of the settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

7.  The court approves the form, substance, and requirements of the class Notice, (Dkt. 181, Amendment, Exh. A).  The proposed manner of notice of the settlement set forth in the

Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

8.   The court appoints Simpluris as settlement administrator. Simpluris shall complete dissemination of class notice, in accordance with the Settlement Agreement, no later than **August 5, 2022**.

9.   Plaintiffs shall file a motion for an award of class representative incentive payments and attorney's fees and costs no later than **September 6, 2022,** and notice it for hearing for the date of the final approval hearing set forth below.

10.   Any class member who wishes to: (a) object to the settlement, including the requested attorney's fees, costs and incentive awards; (b) exclude him or herself from the settlement; and/or (c) opt in to the FLSA Collective Action must file his or her objection to the settlement, or request exclusion, and/or Opt-In form no later than **October 10, 2022**, in accordance with the Notice and this Order.

11.   Plaintiffs shall, no later than **October 17, 2022,** file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date of the final approval hearing set forth below.

12.   Defendant may file and serve a memorandum in support of final approval of the Settlement Agreement and/or in response to objections no later than **October 24, 2022**.

13.   Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs or incentive awards, shall, no later than **October 31, 2022**, file with the court a Notice of Intent to Appear at Fairness Hearing.

14.   A final approval (fairness) hearing is hereby set for **November 10, 2022,** at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel, and incentive awards to the class representatives.

15.  All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 7th day of July, 2022.


                                                        /s/
                                              Fernando M. Olguin
                                              United States District Judge